IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *ex. rel.* Mark W. Prince, ) | |
| ) | |
| **Plaintiffs,** ) | Civil Action No. 5:13cv00045 |
| ) | |
| v. ) | |
| ) | By:  Michael F. Urbanski |
| **VIRGINIA RESOURCES** ) | United States District Judge |
| **AUTHORITY,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This *qui tam* action is presently before the court on defendant Virginia Resources Authority's ("VRA") Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction. Dkt. No. 16. A hearing was held on February 6, 2014. At the hearing, the court granted VRA leave to file within fourteen (14) days any response to the Memorandum of Law filed by the relator, Mark W. Prince ("Prince"), on the morning of the hearing. The court further granted VRA leave to supplement its pleadings, within fourteen (14) days, to elaborate on the similarities between the allegations in this action and those made by Prince in numerous prior state court lawsuits. VRA filed its supplemental briefing on February 21, 2014. Dkt. No. 30. On March 16, 2014, Prince filed a response to VRA's supplemental briefing, and then filed additional evidence on March 23, 2014. Dkt. Nos. 31 & 32. On April 4, 2014, the court entered an oral Order directing the parties to refrain from any further filings. Dkt. No. 33. The matter is thus ripe for adjudication. For the reasons stated herein, the court will **GRANT** VRA's motion to dismiss and **DISMISS** the remainder of the case for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**I.**

Prince alleges, on behalf of the United States, that VRA and others violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733 et seq., by knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval related to federal subsidies and tax exempt status for certain bonds through the Build America Bonds ("BAB") program. See 31 U.S.C. § 3729(a)(1)(A) (creating liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"). Prince asserts that the bonds were issued in violation of Article VII of the Virginia Constitution and that the defendants falsely claimed that the bonds were legally issued in the course of participating in the BAB program. See Am. Compl. ¶¶ 54-55, 111, 115, Dkt. No. 11.[1]

VRA advances three arguments in support of its motion to dismiss. First, it argues that this court lacks jurisdiction under the Rooker-Feldman doctrine because of the numerous prior lawsuits filed by Prince in state court. Specifically, VRA argues that these state court rulings establish that the defendants, including VRA, did not issue the bonds illegally. Second, it argues that Prince's claims are barred by claim and/or issue preclusion for the same reason. Third, VRA claims that it both possesses sovereign immunity and is not a "person" subject to suit under the FCA because it is an arm of the Commonwealth of Virginia.

**II.**

As set forth below, this case does not fall within Rooker-Feldman's narrow jurisdictional bar. Instead, this matter is governed by Virginia preclusion law. Because the critical legal issue – the legality of the bonds issued by VRA and others – has already been decided in previous litigation

---

[1] Prince was granted leave to amend his complaint, Dkt. No. 13, but he has not separately filed one. His motion to amend, however, is itself structured as an amended complaint. Dkt. No. 11. The court construes this docket entry as Prince's amended complaint.

between Prince and VRA, Prince's claims are barred by issue preclusion, also known as collateral estoppel.  As such, the court need not address whether VRA is an arm of the Commonwealth.

**A. Rooker-Feldman is inapplicable.**

"Under the Rooker–Feldman doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" Smalley v. Shapiro & Burson, LLP, 526 F. App'x 231, 235 (4th Cir. 2013) (unpublished) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)).[2] In other words, the doctrine "bar[s] the federal courts from exercising jurisdiction in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs., 521 F. App'x 278, 288-89 (4th Cir. 2013) (unpublished) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005)).  The basis of the doctrine is 29 U.S.C. § 1257, in which Congress vests the Supreme Court with exclusive jurisdiction to review state court decisions on issues of federal law.[3]  The Rooker-Feldman doctrine is a "corollary" to this rule, as it prohibits lower federal courts from exercising such appellate jurisdiction over state court actions. Adkins v. Rumsfeld, 464 F.3d 456, 463 (4th Cir. 2006) (citing Lance v. Dennis, 546 U.S. 459, 463 (2006)).

It is plain that Prince's suit in this case is not effectively an appeal of the state court judgments cited by VRA.  By alleging that VRA violated the FCA, Prince is not seeking "to overturn [an] injurious state-court judgment."  Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011); Saudi Basic, 544 U.S. at 291-92.  His FCA claim is not based on the earlier state court rulings, but on the alleged

---

[2] The court addresses VRA's Rooker-Feldman argument first not only because it is raised first in its pleadings, but because it is a jurisdictional matter and the court is thus obligated to address it first. Id. at 235 (citing Friedman's, Inc. v. Dunlap, 290 F.3d 191, 195-96 (4th Cir.2001)).

[3] There are limited exceptions to this general rule.  See, e.g., 28 U.S.C. § 2254.

3

actions of the defendants. While it is true that there are overlapping issues of fact and law between these state court suits and this one, that it is insufficient to invoke the jurisdictional limitation of the Rooker-Feldman doctrine.

It has been repeatedly and emphatically emphasized by higher courts that Rooker-Feldman is a narrow doctrine. See Skinner, 131 S. Ct. at 1297 (describing the Court's prior holding in Saudi Basic as "emphasizing 'the narrow ground' occupied by the doctrine"); see also Saudi Basic, 544 U.S. at 284 (reversing the Third Circuit where it "misperceived the narrow ground occupied by Rooker-Feldman"); Adkins, 464 F.3d at 463 (citing Lance, 546 U.S. at 463) (noting that the Supreme Court "has recently underscored that Rooker-Feldman is a 'narrow doctrine.'"). Rooker-Feldman "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Saudi Basic, 544 U.S. at 284. The significant overlap between the factual and legal questions presented in this action and Prince's previous state-court lawsuits presents is an issue of preclusion (discussed below) – not of jurisdiction.

> *[T]he Rooker–Feldman doctrine does not stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.*

Davani v. Virginia Dep't of Transp., 434 F.3d 712, 718 (4th Cir. 2006) (emphasis original) (internal alterations omitted) (quoting Saudi Basic, 544 U.S. at 293). Prince's FCA claim that VRA violated 31 U.S.C. § 3729(a)(1)(A) is just such an independent claim.

VRA argues that it significant that Prince did not file this federal action until there was "a known unsatisfactory outcome" in state court. Suppl. Mem. of Law, Dkt. No 30, at 4. The timing of the filing, however, is immaterial, because where "a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related

4

question was earlier aired between the parties in state court." Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011) (internal quotation marks and alterations omitted) (quoting Saudi Basic, 544 U.S. at 292-93). In short, nothing in the Rooker-Feldman doctrine deprives this court of jurisdiction in this matter.

While the Fourth Circuit has applied the Rooker-Feldman doctrine in two recent unpublished decisions, those cases are distinguishable. In Stratton v. Mecklenburg County Department of Social Services, 521 F. App'x 278, the Fourth Circuit found that the plaintiffs were effectively seeking to overturn various state court ruling regarding the termination of the parental rights of two of the plaintiffs. Thus, a favorable ruling in Stratton would have effectively reversed the state court rulings. Here, a holding that VRA violated the FCA would not have the effect of undoing the state court holdings on Prince's state-law claims, even if the judgments would be inconsistent.

In Smalley v. Shapiro & Burson, LLP, 526 F. App'x 231, the Fourth Circuit held that the plaintiffs RICO and pendant state-law claims alleging a "robo-signing" scheme in state foreclosure proceedings were barred by Rooker-Feldman. The Smalley Court found that although a favorable judgment in federal court would not "undo" the foreclosure holdings, it would "in essence, hold that the state court judgments which affirmed the legal fees and commissions and held the allegedly false affidavits sufficient to warrant foreclosure was in error." Id. at 236. In other words, a favorable judgment in the federal action would have reversed the state court rulings as to legal fees and commissions. As such, the Fourth Circuit found that the federal suit raised claims that were "inextricably intertwined" with the state court decisions such that Rooker-Feldman applied.

Smalley is not controlling in this case. Smalley represents a highly extreme and unique scenario in which part of the relief awarded by the state court – legal fees and commissions – would have been negated by a favorable judgment in the federal action, such that the federal action was

5

inextricably intertwined with the prior state court action even where it would not "undo" it directly. That scenario is not present here. A favorable judgment on Prince's independent federal claim would have no impact on any component of the state court judgments as to Prince's state law claims. Moreover, Smalley very likely rests within the outer-most limits of the doctrine. To extend its holding any further would permit Rooker-Feldman to escape the narrow confines repeatedly delineated by the Supreme Court and trespass into the realm of preclusion law. This the court cannot do.[4]

### B. Collateral estoppel bars Prince's claims.

Federal courts are required under the Full Faith and Credit Act, 28 U.S.C. § 1738, to "give the same preclusive effect to a state-court judgment as another court of that State would give." Saudi Basic, 544 U.S. at 293 (quoting Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986)); see also Sartin v. Macik, 535 F.3d 284, 292 (4th Cir. 2008) (citation omitted) ("[I]n deciding the preclusive effect of a state-court judgment, we must look to the law of the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect."). "Confusion sometimes marks legal discourse on the subjects of res judicata, claim preclusion, issue preclusion, and collateral estoppel." Martin-Bangura v. Virginia Dep't of Mental Health, 640 F. Supp. 2d 729, 735 (E.D. Va. 2009). For example, some Virginia courts have described res judicata to mean claim preclusion and collateral estoppel as a distinct doctrine meaning

---

[4] Bizarrely, Prince alleges for the first time in his response to VRA's supplemental memorandum that the state court wrongfully denied him a nonsuit in one of his state court lawsuits. Resp. to Suppl. Mem. of Law, Dkt. No. 31, at 23. Under the subheading "42 U.S.C. § 1983," Prince "requests redress for the State Court intentionally violating Plaintiff's due process rights under the United States Constitution[.]." Id. at 23-24. Setting aside the fact that Prince has not moved to amend his complaint to add this new claim, this request for relief is clearly barred by Rooker-Feldman. Unlike his complaint, this request seeks "to overturn [an] injurious state-court judgment," Skinner, 131 S. Ct. at 1297, specifically the denial of his nonsuit in state court. The proper remedy for any error by the state trial court would be an appeal to a higher state court. If Prince has failed to properly and timely perfect such an appeal, this court has neither the responsibility nor the authority to rescind such a failure.

issue preclusion, while others have characterized res judicata as encompassing both preclusion doctrines. Compare, e.g., Whitley v. Com., 260 Va. 482, 489, 538 S.E.2d 296, 299 (2000) (citation omitted) ("Unlike the doctrine of res judicata, the doctrine of collateral estoppel does not turn upon the issue whether a cause of action in a prior proceeding is the same as a cause of action brought in a later proceeding.") with Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 241, 734 S.E.2d 683, 689 (2012) (citation omitted) ("[T]he principles of res judicata can be comprised of two distinct concepts: 'issue preclusion' and 'claim preclusion.'").

Terminology aside, however, the elements of claim and issue preclusion are well settled under Virginia law. Claim preclusion law is codified by Rule 1:6 of the Rules of the Supreme Court of Virginia, which states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Pursuant to Rule 1:6, a party invoking claim preclusion must demonstrate that: (1) there was a prior claim for relief decided on the merits by a valid and final judgment; (2) the parties are identical or in privity with each other; and (3) the claim made in the later suit arises from the same conduct, transaction, or occurrence as the claim in the first suit. Blick v. Soundview Home Loan Trust 2006-WF1, No. 3:12-CV-00062, 2013 WL 139191, at *2 (W.D. Va. Jan. 10, 2013), aff'd, 521 F. App'x 207 (4th Cir. 2013).[5]

---

[5] "Virginia law previously required that the party seeking to show claim preclusion demonstrate that the later claim required the same evidence and sought the same remedy as the earlier claim, [but] by promulgating Rule 1:6, the Supreme Court of Virginia has discarded the same-evidence and same-

7

Claim preclusion does not apply in this case because the conduct, transaction, or occurrence at issue in this federal action consists of the alleged false statements made to the United States government. Such conduct is distinct from what was at issue in the prior state court lawsuits, where the relevant conduct, transaction, or occurrence was the issuance of the bonds themselves. In contrast, "[i]ssue preclusion bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 241, 734 S.E.2d 683, 689 (2012) (quoting Brock v. Voith Siemens Hydro Power Generation, 59 Va. App. 39, 45, 716 S.E.2d 485, 487 (2011)); see also Gianaris v. Gianaris, No. 2379-09-4, 2010 WL 2650407 (Va. Ct. App. July 6, 2010) (unpublished) (citing Bates v. Devers, 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974)) (stating that collateral estoppel is the preclusive effect based upon a collateral and different cause of action, in which the parties to the first action and their privies are precluded from litigating any issue of fact or law actually litigated and essential to a valid and final personal judgment in the first action). Central to both Prince's numerous prior state court lawsuits and to his allegations here is the claim that VRA and the other defendants issued certain bonds illegally.

Of course, simply because a subsequent case touches upon questions of fact or law that have been previously litigated does not necessarily mean is it proper to invoke collateral estoppel. The Supreme Court of Virginia has enumerated four conditions that must be presented for issue preclusion to apply:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to

---

remedy requirements, adopting instead a same conduct, transaction, or occurrence test." Id. (internal quotation marks and alterations omitted) (quoting Martin–Bangura, 640 F. Supp. 2d at 738). Prince thus relies on outdated law in arguing that res judicata does not apply because the same evidence is not necessary to prove both his claims here and the prior claims he made in state court. See Resp. to Suppl. Mem. of Law, Dkt. No. 31, at 4 (so arguing).

> the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

Martin–Bangura, 640 F. Supp. 2d at 736 (citing Whitley, 260 Va. at 489, 538 S.E.2d at 299); Historic Green Springs, Inc. v. U.S. E.P.A., 742 F. Supp. 2d 837, 849 (W.D. Va. 2010) (same).[6] VRA has submitted a copy of the Final Order in Shenandoah County Circuit Court Case Number CL12000-406-00. Dkt. No. 30-13. Prince was a plaintiff in that case and VRA was a defendant. Thus, condition one is met.

Conditions two and three are also met. The Final Order states that "any further filing in this Court challenging the funding of public projects by or behalf of Shenandoah County, based upon the same or substantially the same legal grounds as have been raised and *rejected in this and four (4) other cases filed by Plaintiff as meritless*, may subject Plaintiff to significant monetary sanctions under Va. Code § 8.01-271.1." Id. at 1-2 (emphasis added). VRA has also filed Prince's motion for judgment in that case. Dkt. No. 30-7. Count Three alleged a violation of "Article VII Section 10 A (3)," a reference to the Virginia Constitution. See Va. Const. art. VII, § 10. Similarly, the allegations underlying Counts One and Two, which alleged a violation of the Virginia Fraud Against Taxpayers Act, Va. Code §§ 8.01-216.1-19 et seq., also rest on Prince's assertion that the VRA was involved in issuing (or purchasing) bonds issued in violation of Article VII of Virginia's Constitution. In addition to the

---

[6] Although these conditions reference factual, not legal issues, it is clear that a legal issue can give rise to issue preclusion as well. See, e.g., Bates, 214 Va. at 671, 202 S.E.2d at 921; Restatement (Second) of Judgments § 27 (1982 updated Mar. 2014) (When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). "[I]t is not ordinarily necessary to characterize an issue as one of fact or of law for purposes of issue preclusion. United States v. Stauffer Chem. Co., 464 U.S. 165, 171 (1984) (internal quotation marks and alterations omitted) (quoting Restatement (Second) of Judgments § 28 cmt. b (1982)). "[I]t is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of law. Id. (quoting Restatement (Second) of Judgments § 28 cmt. b (1982)).

motion for judgment and the Final Order, VRA has also filed Prince's amended motion for judgment in Case Number CL12000-406-00. Dkt. No. 30-10. In that pleading, Prince makes precisely the same legal assertion as he does in his amended complaint here. Id. at ¶ 8 ("The moral obligation pledges issued by Counties, Cities and Towns violate Article VII, Section 10."); Am. Compl. ¶ 54, Dkt. No. 11 ("The moral obligation pledges issued by Counties, Cities and Towns violate Article VII, Section 10."). Indeed, these two pleadings not only rely on many of the same legal arguments, but their language is often close to verbatim. Compare, e.g., Dkt. No. 30-10 at ¶¶ 8-12 with Am. Compl. ¶¶ 54-57, Dkt. No. 11. These documents, in combination with state court Final Order, make clear that the Shenandoah County Circuit Court has ruled – multiple times – that VRA has not violated Article VII in issuing bonds as Prince has alleged in this action.[7] Finally, the Final Order is a valid, final judgment against Prince, and thus the fourth condition necessary for claim preclusion applies as well.

Prince's FCA claims against VRA necessarily depends it having violated Article VII. See Resp. to Suppl. Mem. of Law, Dkt. No. 31, at 7 ("In paragraph 111 of the Plaintiff's amended complaint, Mr. Prince claims . . . that the VRA submitted false statements or claims to the Federal Government claiming that the project complied with Virginia State Laws, for which the Defendants filed for federal subsidies, grants, loans or guarantees or other moneys paid by the federal government to VRA); id. at 11 ("All contracts in which the VRA entered into requesting federal subsidies that were issued using moral obligations as a support structure for the payment of bonds are illegal[.]"). Prince has already had the opportunity to litigate the legality of VRA's bond issuances

---

[7] The Final Order does make a reference to a voluntary dismissal. But viewing the Order as whole, it is apparent that the Shenandoah County Circuit Court addressed the merits of Prince's claims. Moreover, even assuming *ad arguendo* that this particular case did not entail actual litigation of Prince's assertion that bonds were issued in violation of Article VII, the Final Order makes it abundantly clear that the Shenandoah County Circuit Court has addressed that issue in four other prior cases. Under these particular circumstances, the court can confidently conclude that the merits of the issue have been actually litigated in state court.

10

in state court. VRA has already prevailed, multiple times no less, on this issue. It would be manifestly unfair to the winning party, VRA, and an unnecessary burden on the courts to allow repeated litigation of this same legal issue. See Restatement (Second) of Judgments § 28 cmt. b (1982 updated Mar. 2014). As such, collateral estoppel is properly applied in this case.

### III.

On February 18, 2014, Prince's son, Michael A. Prince, moved to intervene. Dkt. No. 29. VRA objects to the intervention, characterizing it as "a transparent, if not absolutely stark naked, attempt to forestall an adverse ruling under the Rooker-Feldman doctrine." Suppl. Mem. of Law, Dkt. No 30, at 11. The court views the motion as a transparent attempt to forestall an adverse ruling under Virginia preclusion law. For the foregoing reasons, the court will deny the motion to intervene, grant VRA's motion to dismiss, and strike VRA as a defendant in this case.

### IV.

VRA's dismissal does not end the case. Prince has named four other defendants: the Shenandoah County Board of Supervisors, U.S. Bank National Association, Suntrust Bank, and SunTrust Equipment Finance & Leasing Corporation. None of these defendants, however, have been served. Indeed, although the complaint in this case was unsealed on July 29, 2013, Dkt. No. 10, the only summons issued was for VRA on October 10, 2013. Dkt. No. 14.

Pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant." As it has been well past a 120 days since the complaint was unsealed, the proper procedure would generally be to provide notice to the plaintiff and dismiss the case against the remaining un-served defendants without prejudice.

This, however, is not the typical case. It is well settled that "[a] district court may dismiss an action for lack of prosecution, either upon motion by a defendant pursuant to Federal Rule of Civil

11

Procedure 41(b) or on its own motion." McCargo v. Hedrick, 545 F.2d 393, 396 (4th Cir. 1976). "Even when Rule 4(m) clearly applies, dismissal for failure to prosecute is sometimes ordered." O'Rourke Bros. Inc. v. Nesbitt Burns, Inc., 201 F.3d 948, 952 (7th Cir. 2000). Such a dismissal may be with prejudice. A district court's authority to dismiss for lack of prosecution has been held by the Supreme Court to be "an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962) (citations omitted). Furthermore, under appropriate circumstances, a court may dismiss a case for lack prosecution under this inherent power without giving advance notice or a hearing. Id. at 631; see also Bush v. Adams, No. CIV.A. 3:09CV674, 2010 WL 1253990, at *2 (E.D. Va. Mar. 24, 2010) (citing Rogers v. Kroger Co., 669 F.2d 317, 319 (5th Cir.1982)) ("The Court may dismiss an action for failure to prosecute with or without notice to the parties.").

Nevertheless, "[a] dismissal with prejudice is a harsh sanction which should not be invoked lightly in view of the sound public policy of deciding cases on their merits." Diamond v. Mohawk Indus., Inc., No. 6:12-CV-00057, 2014 WL 1404563, at *3 (W.D. Va. Apr. 10, 2014) (internal quotation marks omitted) (quoting Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978)). In Davis v. Williams, the Fourth Circuit articulated four factors which district courts consider when weighing a dismissal with prejudice for failure to prosecute or comply with a court order:

> (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal.

Id. at *4 (quoting 588 F.2d at 70); see also, e.g., United States v. Merrill, 258 F.R.D. 302, 308 (E.D.N.C. 2009) (reciting the same Davis factors). This is not, however, "a rigid four-prong test." Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989) (discussing Chandler Leasing Corp. v. Lopez, 669

12

F.2d 919, 920 (4th Cir. 1982) (discussing the Davis factors)). The propriety of a dismissal for failure to prosecute will depend on the particular circumstances of a case. Cf. id. ("[T]he propriety of a dismissal [pursuant to Rule 41(b) for failure to obey a court order] depends on the particular circumstances of the case."). In this case, four reasons compel the court to dismiss with prejudice for lack of prosecution: (1) prejudice to the un-served defendants, (2) waste of judicial resources, (3) Prince's responsibility for the delay, and (4) the impotency of any action short of dismissal with prejudice.

"[O]rdinarily a dismissal for a failure to prosecute is ordered in situations in which a defendant has been served and appeared in a case and, in fact, has been put to some trouble to defend the case. O'Rourke Bros., 201 F.3d at 952. However, while this is ordinarily the case, it is not a necessity. Id. This case is one in which a lack of service does not factor against dismissal for lack of prosecution. First, while Prince and VRA have been actively litigating this matter for some time, the un-served defendants have been denied the opportunity to participate. Clearly these defendants have been prejudiced by the denial of the opportunity to participate in the motions, briefings, and hearings that have been already held in this case. This prejudice is compounded by the fact that all of these un-served defendants were named in Prince's earlier state court lawsuits. See Dkt. Nos. 30-8 (amended motion for judgment naming SunTrust Equipment Finance & Leasing Corporation as a defendant), 30-11 (Final Order reflecting Suntrust Bank as a defendant), 30-12 (Final Order reflecting Shenandoah County Board of Supervisors as a defendant); 30-13 (Final Order reflecting Shenandoah County Board of Supervisors as a defendant). The fact that Prince has actively litigated this case against one defendant to the exclusion of the others, in addition to the fact that he has already litigated and lost controlling legal issues in prior proceedings involved all of the defendants, results in prejudice to the un-served defendants that is not seen with a typical violation of Rule 4(m).

Judicial economy is implicated as well. Permitting Prince to now finally serve these defendants long after the 120 days permitted by Rule 4(m), or to re-file yet another lawsuit, would result in even more re-litigation of previously settled legal issues. Like VRA, the un-served defendants have already litigated and prevailed in state court on the legal issue central to the outcome of this case. Thus, the same issue preclusion presented by Prince's claims against VRA would bars claims against these defendants as well. As such, there would be no injury to the public policy of allowing issues to be decided on the merits – controlling legal issues have already been decided on their merits, multiple times. See Dkt. No. 30-13 (warning Prince not to file claims "based upon the same or substantially the same legal grounds as have been raised and rejected in this and four (4) other cases filed by Plaintiff as meritless").

The court is not obligated to permit Prince to continuously argue legal issues which he has already litigated and lost. Indeed, the very reason for the court's inherent power to dismiss for lack of prosecution is "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link, 370 U.S. at 630-31 (citations omitted). Prince's delay means that the un-served defendants would need to re-litigate every aspect of this case. There is absolutely no reason why these defendants should not have been able to participate in the proceeding up to this point. Instead, the court would be faced with a déjà vu situation of hearing this matter all over again. The court will not tolerate such a waste of judicial resources.

Critically, Prince alone is the party responsible for the delay. Only Prince knows why he has steadfastly ignored the other defendants named in this case, refusing to serve them for months while this matter continued to progress. This neglect is both inexplicable and inexcusable. Prince has been very actively involved in this long saga of litigation. His state court lawsuits were filed *pro se*, and he originally filed his complaint in this case *pro se* as well. Even after retaining counsel, Prince

14

was actively involved at the motion to dismiss hearing, frequently speaking with or passing notes to his attorney. This conduct stands in stark contrast to his lack of diligence towards serving the other defendants. Additionally, he cannot claim ignorance of the Federal Rules of Civil Procedure. Prince retained an attorney in this matter no later than November 27, 2013. Still, on April 15, 2014, he has not served the other defendants.

Finally, nothing but dismissal with prejudice will prevent the harm posed by re-litigating of legal issues that have already been decided. In light of the foregoing, the court finds that it is appropriate to invoke its inherent authority to dismiss with prejudice for lack of prosecution.

## V.

In sum, Prince has had ample opportunity to litigate the legal issues underlying this case. His attempt to litigate against VRA yet again in this federal forum is barred by issue preclusion. Likewise, the court will not allow Prince yet another bit at the apple by finally serving the remaining defendants, or by filing a new a suit against them making the same claims. Prince cannot use a tactic of delayed service as a means for further re-litigation. The court will accordingly dismiss VRA as a defendant and dismiss the remainder of the case with prejudice for failure to prosecute. An appropriate Order will be entered this day.

The clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: April 15, 2014

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge